I would like to reserve two minutes. All right, I'll try to help you out, but keep your eye on the clock as well, please. Of course. Thank you. May it please the court. My name is Theodore Cox, representing Jiang Yiming, the petitioner in this case. His given name, by the way, means inscription of justice. I just wanted to make a note. Before getting into the documentary issues that seem to predominate here, there are a few things not in doubt, and that is the petitioner's identity, that he is a practicing active Christian, and that the background shows that the conditions for Christians, both registered and unregistered in China, are extremely dire. On record at 386, International Religious Freedom Report says that routine torture, abuse, arrest, detention, harassment, of all adherents of Christianity are ongoing, and in particular, proselytizing in public is strictly forbidden. That's on record at 390. It makes for harrowing reading, and it's only worse since this report in 2017. The issue that has seemed to deter or to get the most attention from the judge and the immigration BIA is the church certificate for the Chunwan Christian Church of Changlu City. It was the biggest strike against the petitioner's claim, according to the immigration judge. The BIA knowingly proceeded on the basis of fraudulent evidence, and this seems to be an important crux of the case. What do we make of the point made by the BIA that even if Mr. Zhang did not lose on the other grounds, he doesn't merit a favorable exercise of discretion? Did you specifically challenge that alternative holding in your opening brief, and what do we do with that issue? Well, I would say that the discretionary issue was 100% tied to this church certificate, and then the rest of it was added on. But by challenging the negative credibility, we directly challenged the discretion. I'm not sure if our brief said it in exactly those words, but it's clear that the challenge, this denial on discretion, cannot be made on the same grounds relating to eligibility for asylum. That's the Mamluzian case, 390 after 1129. And so by challenging all of the adverse credibility factors, that is our direct challenge to credibility as well. So, you know, I think analytically, the framework applied by the administrative bodies could be expressed in the Latin term, falsus in juno, falsus in omnibus, which means basically one strike, you're out. If there is a false document, that really, that everything else falls for that reason. That's explained in the Sumi-Gonzalez case, that's 480, F3rd, 160, 2nd Circuit of 2007. Now, this is kind of the leading case on that topic, and there are certain exceptions to when this can be applied. And pertinent and relevant to this case is that where a document is sent by a family member attesting to events, and it turns out to be false, it does not bear necessarily on the alien's own credibility unless he knew or had reason to know of its falsity. And there are other cases relating to that. But I want to also touch on this point of falsity. You know, the falsity that everyone seems to be excited about is the photoshopped photograph on this document. I mean, a false document is normally like a photo sub passport or a, you know, you could think of the example of photos of Lenin in the crowd standing next to Trotsky. And then later on, Trotsky disappears and is airbrushed out. I mean, that is, that is a, has the enter an intent to lie, an intent to change the meaning of that, let's say, photo. So that that's not the case here. I mean, the mother, even in her letter, explained that she did photoshop that document. We have in the record the photo that it came from. But even if it's, you know, kind of an isolation, you would view it as a sort of an immaterial lie or an immaterial alteration. The fact that the alteration is made and not disclosed to the court, why isn't that something the court can say? Well, I mean, yes, you made this sort of immaterial lie. But what else are you hiding from me that I don't know? And can't they just use that as a basis for an adverse inference? Well, he did disclose it when asked about it, but he didn't confront it. I mean, DHS discovered it first. Well, he himself didn't know about it when he got it. And he was in the record. He only found out about it after it had been submitted to the attorney and to the court. Then he was meeting a friend who pointed out the similarity of the of the photo and the other origination of that photo. But it's not. But I still averve that that is not a false photo. It is him. I mean, what if he had just cut out his head only with nothing else and put that photo of his head on the document? I mean, it is his head. It is who he is. The point of it is not to infer an identity of a different person than the person he's identifying on the on this document. So first, it is not a fake. I mean, it is it is a manipulated. But in terms of the purpose of identity, identifying the face of the person on this church document, it's not false. It is him. And that's. This point was there was no other mother had no other way to get his face onto the document. So it's not false. And in addition, he didn't know about it until later when after submission. Yeah. I don't see why. Why any immediately responded about it with knowledge about when he knew about it, when when when confronted with it. So it was not I think the idea that this is a grand scheme to pull one over on the court is just based on those factors, not sustainable. Can I ask you a clarifying question with respect to the issue of withholding? Are you challenging the BIA's denial of withholding on any grounds other than the adverse credibility determination? Because you have a section you brief on adverse credibility. Then you have a section on well-founded fear of future persecution, which is the language of asylum. Are you raising any claim with respect to withholding other than the credibility determination? Well, the both the credibility of asylum and withholding credibility goes to both. I understand that. And your brief is clear on that. But I'm wondering, do you have an argument on withholding other than attacking the credibility determination? I don't believe so, Your Honor. Counsel, you wanted to reserve time. Yes. Yes, I do. Thank you. Let's hear from the government. Good afternoon from Washington, Your Honors. May it please the court, Alexander Lutz for the government. I'm going to follow the line of Judge Collins's questioning and jump straight into the discretionary aspect of the case and whether or not it's been exhausted. And right off the bat, I have to note some intervening precedent. It doesn't have a huge impact on this case, but it is on point, and I haven't had an opportunity to 28J it. That case is Santos-Zachariah from the Supreme Court. We cited exhaustion in our answering brief as a jurisdictional bar. Santos-Zachariah said it's not technically jurisdictional, but it does remain mandatory. So with that one minor distinction, our position on exhaustion remains the same. I didn't want to bring that case to the court's attention. Well, but his argument on why he has exhaustion is, look, if you come to a court and you say, you know, this determination is bad because I wasn't considered to be credible and all these additional factors shouldn't have should have been considered. And that subsumes within it the discretionary determinations. The whole thing is bad and needs to be redone according to that argument. So why isn't that an adequate response to your exhaustion point? Well, thank you, Judge Collins, because you anticipated my next point. There's two reasons why that argument isn't sufficient here. One, discretion has a different standard. A discretionary denial of asylum is conclusive unless it's manifestly contrary to law or an abuse of discretion. There's a different standard from adverse credibility. Petitioner's opening brief didn't cite that standard, didn't cite that statute, didn't cite Kalubi, which I think is this court's leading case on the issue, didn't cite Matterpula, which is the board's leading case on the issue. So we would respectfully reiterate that that whole issue has been abandoned by the petitioner. But even so, to the heart of your question about the overlap with the adverse credibility finding, Mr. Zhang's argument about the altered photo issue continues even in his presentation today to respond to a different hypothetical decision other than the real one the agency actually issued. The agency never said this photo in and of itself torpedoes Mr. Zhang's credibility. The IJ said, and I quote, the biggest mark against petitioner's credibility is the altered photo and the fact that he never disclosed it had been altered. His failure to disclose that his evidence is not reflective of the original document calls everything he filed into question. So the point I want to make there is that Mr. Zhang did in his brief to the board and did in his opening brief to this court continue to push this argument that the alteration to the photo itself is not material. But that challenge alone, whatever its merit, cannot be dispositive of what the agency actually found, which is the fact that he wasn't candid about the photo's alteration. And even that, in combination with other adverse credibility factors, that's what undercut his credibility. So anyway, to sum up on that point. Let me ask you this. If we don't find that the finding with regard to the altered photo is supported by the record, does that mean that we also reverse on the discretionary ground as well? That goes to your first argument because the alternative ruling from the BIA specifically cites the submission of fraudulent evidence being the ground for finding him not worthy of a favorable exercise of discretion. So it seems to me that that alternative holding really hinges on the adverse credibility determination, specifically the altered photograph issue. Respectfully, the answer to your question, Your Honor, if you disagree with the agency about the altered photo in the credibility context, we would still assert that Your Honor should deny the petition for review based on the waived, the abandoned discretionary issue. I don't think there's a complete overlap. Number one, because they have two different standards. And number two, this is the more important point, because even if the court were to decide that it disagrees with the agency about whether this altered photo issue can support an adverse credibility finding, the holding that would lead to here is that a reasonable fact finder wouldn't determine the photo and Mr. Zhang's lack of candor about it to undermine his credibility. But that's still just one of several grounds the agency gave for its credibility finding. And my point there is that if the court disagrees on this one basis for the credibility finding, which is the photo issue, that doesn't render Mr. Zhang credible. That undermines one ground the agency gave for its credibility finding, but he remains incredible. And the agency has the discretion to decide that this petitioner, who didn't demonstrate his statutory eligibility for asylum, because he's still not credible, and didn't demonstrate candor regarding this photo, isn't worthy of a discretionary grant of asylum. I'd like to make one quick point on this issue, because as I was working this case up, I thought this question might be coming, Judge Nguyen, and it was because I was reading this court's opinion in Kalubi. And I wonder if that might be hovering in the background of the court's mind. In that case, the court held that a non-citizen couldn't be credible for purposes of credibility, but then lack candor on the same point in the context of a discretionary asylum denial. And I want to emphasize, this case is materially distinguishable from that Kalubi case. What happened in Kalubi was that this court applied a rule that has now been overruled by the Supreme Court. Before the Supreme Court's ruling in Ming Dai, this court applied a rule of its own in the credibility context that said if the agency doesn't make an explicit credibility determination, he's deemed credible. So in Kalubi, the agency said, we don't totally believe this non-citizen. We're not going to totally credit his claim. But then it refrained from making an explicit adverse credibility finding, and went straight to the discretionary issue and said, we don't think he has the candor required to warrant a discretionary grant of asylum. And then before this court, the court said, well, the agency didn't render an explicit adverse credibility finding. So that means he is credible. So now we have this unusual situation of a fully credible petitioner who has been held to lack candor on the same point in the discretionary asylum context. Obviously, there's some tension between those two issues in that specific context where the petitioner is deemed credible. But here, number one, that deemed credible rule no longer applies. Number two, the agency did render an explicit adverse credibility determination. And number three, the photo issue is only one prong of several for the adverse credibility determination. So if the court concludes that no reasonable fact finder could conclude that Mr. Zhang's failure to disclose the altered photo undermined his credibility, the question then would become, does the agency have discretion to deny asylum to a petitioner who is otherwise incredible based on his demonstrated lack of candor regarding this issue? And I do want to emphasize if I can interrupt you. Of course, please have it here. Can you address the analysis for future risk of persecution? Doesn't look like the BIA addressed that part that IJ did, but the BIA didn't. Should we remanded the BIA to address the future risk of persecution? Thanks for bringing that up, Your Honor. I don't think that requires a remand. I do agree with you that the board doesn't seem to have addressed that aspect of the immigration judge's finding. But the position we took in our brief, and I think this is correct, is that lack of analysis by the board is immaterial in this particular case because of the nature of the arguments Mr. Zhang made about his future fear of persecution when he was before the board and again before this court. In both his brief to the board and his brief to the court, his argument about his well-founded fear of persecution wasn't cabined to whether he might be persecuted based on his U.S. Christian practice. That was what the immigration judge had decided. Instead, Mr. Zhang responded to the board and has argued in this court, he's pushed back against that finding, resting in large part on the very past events that the agency found not to be credible. So where the immigration judge says, I don't find you credible, and then as to whether you'd be persecuted just for having practiced Christianity in the United States, I don't think you've shown a well-founded fear there. And Mr. Zhang responds with, you know, based on my credible testimony and my past membership in a house church, and I'm quoting there from page 47 of the record, his brief to the board, it doesn't warrant remand for the board to have failed to address that argument because that argument was a misfire. And that's the same misfire in his opening brief to this court. He says, page 34 of his brief, that his U.S. practice of Christianity, quote, coupled with his prior arrest. Well, the agency found him not credible about that prior arrest. So don't think that warrants remand, but I appreciate your question about it. I mean, the IJ's ruling talked about what would happen if he were to go back to China now and what kind of situation he would face, and she made an assessment of that. And his brief for the BIA does the same thing, talks about the State Department reports about what happened in churches and what would happen if he would go back. And then the BIA just said nothing on the issue. I don't, why isn't that just a classic situation to remand? We can't, we can't add agency findings that the agency doesn't make. I take your point, Your Honor, and I think the court could go two ways on it. I think the first way the court could rule on that is to say, yes, the board didn't address it. However, this issue doesn't require remand because Mr. Zhang failed to exhaust or alternatively waived his challenge to that narrow reasoning by the immigration judge. I just told you the part of his brief before the BIA on page 47 on the record where he does raise this issue. So I don't see how I could say it was unexhausted. I see your point, Your Honor. What I was about to say is that he blends that argument that you're quoting. I'm not disputing your quoting of the record, but he blends that in with claims about his credible testimony and his membership in a house church. So the agency is saying, you're not credible about the past. On the merits as to the future, you haven't shown a well-founded fear. And he responds with, if you take the future and my past together, the past the agency didn't find credible, then I have shown a well-founded fear. So that's option one. The court could say because he blended those two arguments together, he either failed to exhaust or waived a direct challenge to the agency's reasoning. But if you don't buy that, Judge Collins, I would say that the appropriate course would be to remand to the agency on an open record for the agency to make an explicit determination about this narrow point in the first instance. And I do think that the rest of the agency's decision regarding credibility and discretionary denial of asylum could be upheld for the reasons that we've given in briefing. All right. Thank you very much, Counsel. Thank you, Your Honor. Mr. Cox. Just briefly, thank you, Your Honor. We did address many, I believe, all of the other credibility issues in our brief. And some are somewhat far-fetched, like the fact that he went to, left his relative in Florida and went to Los Angeles and then went to Hawaii, and the judge found that made a point of finding this to detract from his credibility. And so I believe that we've addressed all of those issues. You know, there's one other, and I also 100 percent agree, that given his continuing and active church membership, which is amply demonstrated by letters from Christian churches in the United States, that the background shows a risk to Christians in China right across the board, and so that his future fear of persecution is neither way, nor is it a minor issue. And certainly, I agree, a remand is essential on that point. And, you know, there's one other issue about documents that I would briefly address. It's a fine receipt that the judge had trouble with. I think it's important, also in his credibility, except that the language attending illegal church activity is ambiguous. The judge himself, the immigration judge, said maybe it's just a question of bad wording, and that's a record of 250. And, frankly, the record is there was no question, there was no opportunity to address that. No question was asked by anyone in the proceeding what that meant, or how do you explain what that meaning was. And there was little, the hearing itself was extremely short because of the time constraints of the proceeding. And so really, it was less than a full proceeding and giving an opportunity to confront negative factual issues in the case. I thank the court, and if there are no questions, I rest on my brief. All right, thank you very much, counsel, to both sides for your helpful arguments today. The matter is submitted for a decision by the court, and we're adjourned for the day. This court for this session stands adjourned.
judges: NGUYEN, COLLINS, LEE